JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
THOMAS PINTO

**DEFENDANTS**
BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 PA/DE; THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS; DENN PAGLIOTTI, individually, RICHARD NEWCOMB, individually, AND MATTHEW STAFFORD, individually.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andres Jalon, Esquire
Derek Smith Law Group, PLLC 1845 Walnut Street, Suite 1601,
Philadelphia, PA 19103 (215)391-4790

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964("Title VII"), 42 U.S.C. §1981

Brief description of cause:
Plaintiff seeks to redress injuries suffered as a result of discrimination by his employer based on his disability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
01/15/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1106  Moyamesing Avenue, Philadelphia, PA 19148

Address of Defendant: 2706 Black Lake Place Philadelphia, PA  19154

Place of Accident, Incident or Transaction: 2706 Black Lake Place, Philadelphia, PA 19154

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY*:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases*:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Andres Jalon , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 01/15/2018 _____    _____    83685

Attorney-at-Law    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/15/2018 _____    _____    83685

Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| THOMAS PINTO | : | CIVIL ACTION |
| v. | : | |
| BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 1 | : | |
| PA/DE; THE INTERNATIONAL UNION OF | : | |
| BRICKLAYERS & ALLIED CRAFTWORKERS; DENNIS PAGLIOTTI, | : | NO. |
| individually; RICHARD NEWCOMB, individually AND MATTHEW STA | : | |
| STAFFORD, individually. | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( x )

| | | |
|---|---|---|
| 01/15/2018 | Andres Jalon | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-391-4790 | 215-893-5288 | Andres@dereksmithlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------X

THOMAS PINTO,                                        Civil Action No.:

Plaintiff,

        -against-                                **COMPLAINT**

BRICKLAYERS & ALLIED CRAFTWORKERS             Plaintiff Demands a
LOCAL 1 PA/DE; THE INTERNATIONAL UNION OF     Trial By Jury
BRICKLAYERS AND ALLIED CRAFTWORKERS;
DENNIS PAGLIOTTI, *individually*; RICHARD NEWCOMB,
*Individually* and MATTHEW STAFFORD, *individually*.

Defendants,

-----------------------------------------------------------------------X

       Plaintiff, THOMAS PINTO, respectfully alleges the following claims, as for his

complaint against the above captioned defendants, upon information and belief as follows:

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to the American with Disabilities Act of 1990, 42 U.S.C.

    § 12101 *et. seq* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C.

    §2611, *et seq*. ("FMLA"); the Pennsylvania Human Relations Act, as amended, 43

    P.S. §§ 951, *et. seq.* ("PHRA"), and The Philadelphia Fair Practices Ordinance § 9-

    1103(1), and seeks damages to redress the injuries Plaintiff suffered as a result of

    unlawful discrimination, retaliation, and termination by Defendants solely due to his

    disability.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is also conferred upon this Court as this action involves a Federal question under the American with Disabilities Act and Diversity of Citizenship, under 28 U.S.C. §1332. The Court also has supplemental jurisdiction over the State Causes of Action.

3.  This action involves a question of Federal Law under Title VII of the Civil Rights Act of 1964.

4.  Plaintiff is a citizen of the Commonwealth of Pennsylvania, residing in the City of Philadelphia.

5.  At all times material, Defendant, The International Union of Bricklayers and Allied Craftworkers, was and still is a foreign labor union, with principal office in Washington D.C. and in the City of Philadelphia.

6.  That at all times herein mentioned, The Union of Bricklayers and Allied Craftworkers Local 1, PA/DE, was and still is a domestic unincorporated organization existing by virtue of the laws of the Commonwealth of Pennsylvania.

7.  At all times material, Defendants Dennis Pagliotti, Richard Newcomb and Matthew Stafford were and are employed with the Union of Bricklayers and Allied Craftworkers, Local 1, PA/DE, whose principal place of business is within the Commonwealth of Pennsylvania and in the City of Philadelphia.

8.  Venue is proper in this district since Plaintiff was employed by Defendants within the City of Philadelphia, Pennsylvania. Additionally, the events took place in the City of Philadelphia, Pennsylvania.

9. The matter in controversy exceeds $75,000.

10. On or about, August 9, 2017, Plaintiff dual-filed charges with the EEOC and PHRC against Defendants as set forth herein.

11. On or about, October 29, 2017, the EEOC issued Plaintiff a Right to Sue Letter.

12. This action is commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

13. Plaintiff, THOMAS PINTO (hereinafter referred to as "Plaintiff" and/or "PINTO") is an individual male who is a resident of the County of Philadelphia, located within the Commonwealth of Pennsylvania.

14. Defendant, is Bricklayers & Allied Craftworkers Union, Local 1, PA/DE (hereinafter referred to as "BAC"), which is a domestic labor union, whose principal offices are located in Philadelphia and is authorized to do business in the Commonwealth of Pennsylvania.

15. Defendant, International Brick Layers & Allied Craftworkers (hereinafter referred to as "INT-BAC") is an international domestic labor union, authorized to do business in the Commonwealth of Pennsylvania, whose principal business office is located in Washington, D. C.

16. Defendant, DENNIS PAGLIOTTI, (hereinafter referred to as "PAGLIOTTI") is an individual male employed by "BAC" and "INT-BAC," as the President of BAC and a Regional Supervisor for "INT-BAC." At all times material, PAGLIOTTI, was Plaintiff's Supervisor.

17. Defendant, RICH NEWCOMB (hereinafter referred to as "NEWCOMB") was and is

an individual male employed by defendants "BAC" and Respondent "International

BAC." At all times material, NEWCOMB was Plaintiff's co-worker.

18. MATT STAFFORD (hereinafter "STAFFORD" or "Respondent STAFFORD") was

and is an individual male employed by defendants "BAC" and Respondent

"International BAC." At all times material, STAFFORD was Plaintiff's co-worker.


## STATEMENT OF FACTS


19. On or about August 1989, Plaintiff joined the Bricklayer's Union run by defendants

BAC and INT-BAC.

20. On or around June 2013, defendants BAC, INT-BAC and PAGLIOTTI, hired Plaintiff

for the position of a Union Field Representative for the Bricklayers & Allied

Craftworkers Union, Local 1, PA/DE (BAC).

21. A field representative is an appointed union member, appointed by the INT-BAC and

BAC, by the local president of the BAC and INT-BAC; the president of BAC and

representative for INT-BAC locally was defendant PAGLIOTTI.

22. The Plaintiff's position as a field representative is a liaison between the union, the

contractor and the union worker. A field representative is employed to overview

union members accounts involving health and welfare, union pension accounts and

other benefits involving union members.

23. On or about late October 2016, Plaintiff, after medical examination, was diagnosed

with an eighty (80) gram cancerous mass in his chest. The mass was determined to be

a cancerous mediastinal mass. A mediastinal tumors are cancerous growths that form

in the area of the chest that separates the lungs. The mediastinal region contains the heart, aorta, esophagus and thymus and trachea. Due to their location in the mediastinal region, tumors that are left untreated can cause serious complications including invading the heart, pericardium and great vessels.

24. Given the emergent nature of his condition and diagnosis, Plaintiff was ordered by his physician to pick a date for surgery within two weeks to two months to remove the mass from Plaintiff's chest.

25. Plaintiff after reviewing his work schedule decided on the date of December 14, 2016 for his surgery.

26. On or about that same time, Plaintiff advised PAGLIOTTI of his need for emergent surgery and that he would have to take medical leave for eight (8) to twelve (12) weeks, commencing December 1, 2016.

27. Plaintiff advised PAGLIOTTI that he reviewed his schedule and planned his surgery during periods of time where work was slower to prevent work overload for the staff that would cover him during his medical leave and recovery.

28. Moreover, Plaintiff scheduled surgery his so that he could attend the November 2017, union meeting, as a trustee of the union pension plan, annuity account and retirement plans offered for union members and supported by BAC and INT-BAC.

29. Plaintiff, prior to his termination, served as vice-chair of BAC and the trustee of numerous union funds supported by BAC and INT-BAC.

30. PAGLIOTTI advised Plaintiff that he would have to produce a note from his physician to document his "long" absence. Plaintiff agreed to contact his physician and get a letter forthwith.

31. On November 29, 2016, Plaintiff provided PAGLIOTTI with a note from his surgeon advising that Plaintiff was scheduled to have surgery on December 14, 2016 and would have to be home on bedrest for eight to twelve weeks.

32. On that same day, PAGLIOTTI advised Plaintiff that his medical leave request was "too long." Plaintiff responded to PAGLIOTTI that per his physician's orders, it was in his best interest that he not attend any functions or perform any work that could put his health at risk prior to surgery.

33. At no point in time, during the time that these claims arose, did PAGLIOTTI grant Plaintiff the opportunity to apply for FMLA.

34. During this conversation, Plaintiff again informed PAGLIOTTI, that his medical leave would have to commence on December 1, 2016.

35. On November 30, 2016, Plaintiff reported to work for his last day before medical leave, PAGLIOTTI greeted Plaintiff, shook his hand and wished him a speedy recovery.

36. On December 5, 2016, PAGLIOTTI sent the Plaintiff a letter, via email, dated December 5, 2016, calling into question the veracity of the letter provided by Dr. Kucharczuk's office, PAGLIOTTI wrote to Plaintiff: "You do not appear to me as a layman to be suffering from any particular illness at the moment."

37. PAGLIOTTI called Plaintiff and demanded that he immediately return to work and if he did not, he would be subject to "immediate termination." Plaintiff could not

believe PAGILIOTTI's order and began to suffer extreme stress, anxiety and emotional duress.

38. Plaintiff was afraid that returning to work would be harmful to him as advised by his physician. Notwithstanding, Plaintiff saw no other option but to return to work so that he would not be terminated by PAGLIOTTI.

39. On December 5, 2016, Plaintiff returned to work against medical advice. During this time, Plaintiff was nervous, in pain, physically and emotionally suffering from a tremendous amount of stress and anxiety. Plaintiff was afraid that returning to work would negatively impact his physical and mental condition, his surgery and recovery.

40. On December 9, 2016, Plaintiff, no longer able to work because of exhaustion and severe pain brought on by his medical condition, the result of the denial of leave by PAGLIOTTI, began his pre-surgery medical leave.

41. On December 14, 2016, Plaintiff underwent a two hour surgery to remove the cancerous mass in his chest.

42. On December 16, 2016, Plaintiff was released from the hospital and sent home to recover. When Plaintiff was sent home, his chest was still sutured and he was confined to bed rest and given strict instructions for the care of his wound. Plaintiff was also advised by his physician to avoid stressful situations and to stay home from work until he was medically cleared.

43. On January 13, 2017, at 9:18 am, Plaintiff received an email from PAGLIOTTI threatening to terminate Plaintiff for abandoning his employment. PAGLIOTTI also demanded an explanation from Plaintiff to justify his medical leave. PAGLIOTTI

ordered Plaintiff to provide documentation of Plaintiff's surgery and PAGLIOTTI

insisted that Plaintiff return to work.

44. PAGLIOTTI gave Plaintiff until January 20, 2017 to provide PAGLIOTTI with his

medical records or PAGLIOTTI would terminate Plaintiff.

45. On that same day, Plaintiff fearful and distraught that he would be terminated

contacted his physician requesting his medical records be immediately sent to

PAGLIOTTI.

46. Within a short time after Plaintiff's request, the physician's office faxed copies of

Plaintiff's medical records and surgical reports to PAGLIOTTI.

47. On that same day, at or about 9:30 am, PAGLIOTTI sent NEWCOMB AND

STAFFORD to Plaintiff's home to retrieve the company smart phone, the company

car and keys to the building in Plaintiff's possession.

48. NEWCOMB and STAFFORD arrived and pounded on Plaintiff's door shouting to let

them in and that they knew he was "faking" it, referring to Plaintiff's medical

condition.

49. Plaintiff answered the door in his hospital garb with an ice pack over his chest, his

surgical wounds obvious. NEWCOMB and STAFFORD laughed and ridiculed

Plaintiff's condition as they came into his home. Plaintiff felt aghast that he was

ridiculed by co-workers that he knew for such a long time.

50. NEWCOMB and STAFFORD then demanded that Plaintiff immediately surrender

his phone, that he not touch the phone and that he provide the PIN. NEWCOMB and

STAFFORD stood over Plaintiff to make sure that Plaintiff did not delete or forward

any messages from his phone.

51. As already stated, Plaintiff's work "smart phone" received the threatening email that
PAGLIOTTI had sent him earlier that day.

52. NEWCOMB and STAFFORD then advised Plaintiff that they were told by
PAGLIOTTI that Plaintiff was fired and that they had been sent by PAGLIOTTI to
Plaintiff's home in South Philadelphia to retrieve the car, the smart phone and keys
from Plaintiff. Both NEWCOMB and STAFFORD were already on their way to
Plaintiff's house when PAGLIOTTI had emailed Plaintiff at 9:18am.

53. Plaintiff turned over his cell phone, work keys and keys to the vehicle to NEWCOMB
and STAFFORD. NEWCOMB and STAFFORD continued to taunt Plaintiff and to
treat him in an aggressive, belligerent and demeaning manner.   Plaintiff in a
weakened post-operative condition was made to feel anxious, emotionally distraught,
felt increasing pain and heightened suffering caused by NEWCOMB and
STAFFORD.

54. Even though Plaintiff complied with PAGLIOTTI'S demands, he was still terminated
that day. In fact, PAGLIOTTI's demand for medical records from Plaintiff was just a
ruse. PAGLIOTTI intended to terminate Plaintiff whether or not Plaintiff was able to
comply with the records.

55. PAGLIOTTI as the President of Local I for BAC, PAGLIOTTI is responsible for
INT-BAC's business in the Philadelphia area and made decisions on INT-BAC's
behalf.

56. PAGLIOTTI was aware that the INT-BAC's Pension Plan granted Plaintiff eligibility
to contribute to the pension once he made $10,000, in the year 2017.  INT-BAC

57. Plaintiff was terminated by PAGLIOTTI just prior to making $10,000.00 for the first month of the year.

58. PAGLIOTTI's termination of Plaintiff disqualified him from making any pension contributions to the INT-BAC Pension Plan.

59. PAGLIOTTI'S termination of Plaintiff was done with the intention of precluding Plaintiff from eligibility for 2017 and affect Plaintiff.

60. On February 10, 2017, PAGLIOTTI mailed Plaintiff a letter of termination with an attached severance package. Plaintiff refused to sign.

61. In March of 2017, PAGLIOTTI contacted Plaintiff and insisted they meet for lunch to discuss the termination letter and severance package.

62. At the lunch meeting, PAGLIOTTI threatened to take away Plaintiff's medical benefits if Plaintiff did not sign the aforementioned documents. Plaintiff refused to sign the documents. PAGLIOTTI inflamed by Plaintiff's refusal to sign terminated Plaintiff's medical benefits.

63. At all times relevant hereto, Defendants failed to provide Plaintiff with the notices required under the Family Medical Leave Act (FMLA) or to otherwise comply with the FMLA law.

64. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

65. As a result of Respondents' discriminatory treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

66. Plaintiff suffers from regular panic attacks and nightmares as a result of Defendants' conduct. Plaintiff has difficulty sleeping and eating.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Respondents jointly and severally.

69. The above are just some of the examples of unlawful, discriminatory and retaliatory conduct to which Defendants' subjected Plaintiff.

70. Respondents have established a pattern and practice of discrimination and retaliation through their actions.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

73. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability. Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by his chapter or because such individual made a charge, testified, assisted, or  participated in any manner in an investigation, proceeding, or hearing under this chapter."

76. Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs
    of   this complaint.

78. The PHRA § 955 provides that  it shall be an unlawful discriminatory practice:  "(a)
    For any employer because of the race, color, religious creed, ancestry, age, sex,
    national origin or non-job related handicap or disability or the use of a guide or
    support animal because of the blindness, deafness or physical handicap of any
    individual or independent contractor, to refuse to hire or employ or contract with, or
    to bar or to discharge from employment such individual or independent contractor, or
    to otherwise discriminate  against such individual or independent contractor with
    respect to compensation, hire, tenure, terms, conditions or privileges of employment
    or contract, if the individual or independent contractor is the best able and most
    competent to perform the services  required."

79. Defendant engaged in an unlawful discriminatory practice by discriminating against
    the Plaintiff because of his medical disability.

80. Plaintiff hereby states his claim against Defendant under all of the applicable
    paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER STATE LAW

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs
    of this complaint.

82. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For

    any person, employer, employment agency or labor organization to discriminate in

    any manner against any individual because such individual has opposed any practice

    forbidden by this act, or because such individual has made a charge, testified or

    assisted, in any manner, in any investigation, proceeding or hearing under this act."

83.  Defendant engaged in an unlawful discriminatory practice by discharging, retaliating,

    and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to

    the unlawful employment practices of his employer.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING & ABETTING
### UNDER STATE LAW
### (against all defendants)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs

    of this complaint.

85. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For

    any person, employer, employment agency, labor organization or employee, to aid,

    abet, incite, compel or coerce the doing of any act declared by this section to be an

    unlawful discriminatory practice, or to obstruct or prevent any person from complying

    with the provisions of this act or any order issued thereunder, or to attempt, directly or

    indirectly,  to commit any act declared by this section to be an unlawful

    discriminatory practice."

86. Defendant engaged in an unlawful discriminatory practice in violation of PHRA

    §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory

    conduct.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE PHILADELPHIA
## CITY ADMINISTRATIVE ORDINANCE

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs

    of  this Complaint.

88. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an

    unlawful discriminatory practice: "It shall be an unlawful employment practice to

    deny or interfere with the employment opportunities of an individual based upon his

    or  her race, ethnicity, color, sex (including pregnancy, childbirth, or a related

    medical condition), sexual orientation, gender identity, religion, national origin,

    ancestry, age, disability, marital status, familial status, genetic information, or

    domestic or sexual violence victim status, including, but not limited to, the following:

    (a) For any employer to refuse to hire, discharge, or otherwise discriminate against

    any individual, with respect to tenure, promotions, terms, conditions or privileges of

    employment or with respect to any matter directly or indirectly related to

    employment."

89. Defendants engaged in an unlawful discriminatory practice in violation of

    Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining

    discriminatory working    conditions, and otherwise discriminating against Plaintiff

    because of Plaintiff's disability.

90. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE PHILADELPHIA
## CITY ADMINISTRATIVE ORDINANCE

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of  this Complaint.

92. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

93. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER THE PHILADELPHIA
## CITY ADMINISTRATIVE ORDINANCE

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of  this Complaint.

95. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or  coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder  or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

96. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:          Philadelphia, Pennsylvania

                January 12, 2018

                                    **DEREK SMITH LAW GROUP**

                                    **Attorneys for Plaintiff**

                                    By: _____

                                        Andrés Jalon, Esq.
                                        1845 Walnut Street, Suite 1601
                                        Philadelphia, Pennsylvania 19103
                                        (215) 391-4790
                                        andres@dereksmith.com